UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AMY FRIEDMAN, et al.,<br><br>        Plaintiff,<br><br>v.<br><br>GUTHY-RENKER, LLC, et al.,<br><br>        Defendant. | No.<br><br>Pending in C.D. Cal.<br>Case No. 2:14-cv-06009-ODW-AGR<br><br>NON-PARTY AMAZON SERVICES, LLC'S MOTION FOR PROTECTIVE ORDER<br><br>Note for Motion: November 4, 2016 |

As a non-party to this case, Amazon is entitled to broad protections from discovery that is burdensome or of marginal value. Plaintiffs have subpoenaed Amazon to produce the highly confidential identities and contact information of its customers. By any reasonable measure, the burdens of that production—both to Amazon and to its customers, who have no ability to defend their own privacy interests or make their wishes known here—would outweigh any minimal value that confidential information might have to Plaintiffs.

Amazon takes very seriously its customers' privacy and the security of their confidential information. Inversely, customers rely on Amazon's privacy policies and expect their personal data to be safe. Plaintiffs' demand is doubly intrusive because it forces Amazon to violate its customers' trust, and it invades those customers' privacy without notice. Plaintiffs assume that consumers would prioritize notice of a class action settlement recovery over the security of their personal data, but that is not a choice that Plaintiffs or this Court have the right to make.

AMAZON SERVICES, LLC'S MOTION FOR PROTECTIVE ORDER - 1

1  Moreover, subpoenas like Plaintiffs' force Amazon to act as an involuntary clearinghouse for
2  class action settlement data, a cumulative burden that will increase as more class plaintiffs make
3  similar requests.

4  Weighed against those substantial burdens to Amazon and its customers, the information
5  Plaintiffs seek will have at best marginal value here.  The information is only useful to
6  potentially expand the reach of Plaintiffs' class settlement notice.  But Plaintiffs concede that
7  they have many alternative means to effectuate notice, including direct mailings to
8  approximately six million potential class members.  This case and the settlement have also been
9  well-publicized.  Thus, there is no compelling need for Amazon customers' personal
10 information, and certainly nothing that overrides those customers' privacy interests.

11 Because the burden on non-parties outweighs any benefit to Plaintiffs, Amazon
12 respectfully requests that the Court enter a protective order quashing the subpoena and relieving
13 Amazon of the obligation to produce its customers' private information.

## I.  FACTUAL BACKGROUND

15 Plaintiffs are named representatives of a putative class in the underlying case, *Amy*
16 *Friedman v. Guthy-Renker, LLC*, No. 2:14-cv-06009-ODW-AGR (C.D. Cal.).  On October 3,
17 2016, Plaintiffs issued a subpoena to Amazon seeking customer identities and contact
18 information for purchasers of "WEN® Hair Care Product(s)."  *See* Declaration of Vanessa
19 Power ("Power Decl."), Ex. A.  Amazon timely served objections on October 12, 2016.  *Id.*, Ex.
20 B.  Amazon's objections made clear Amazon's position that it would not disclose its customers'
21 identities and contact information.  *Id.* ("Amazon will not produce customer identifying
22 information.").  This was not a revelation.  Before the subpoena was issued, counsel for Plaintiffs
23 and Amazon discussed Plaintiffs' anticipated request for confidential customer information, and
24 Amazon explained that it would not breach its customers' privacy and security expectations.  *Id.*
25
26

AMAZON SERVICES, LLC'S MOTION FOR PROTECTIVE ORDER - 2

¶ 4.[1]  After Amazon served objections, Plaintiffs' counsel contacted Amazon not to meet and confer, but to indicate their intent to file a motion to compel.  *Id.,* Ex. C.

The parties' counsel conferred in good faith on October 19, 2016.  *Id.* ¶¶ 10, 11.  Plaintiffs declined to withdraw their request for Amazon customers' personal information, so Amazon brings this motion.  *Id.*

## II.  ARGUMENT

In evaluating whether to enforce a third-party subpoena, this Court must weigh "'the burden to the subpoenaed party against the value of the information to the serving party.'"  *Arista Records LLC v. Lime Grp. LLC*, No. 10-CV-02074-MJP, 2011 WL 679490, at *3, *5 (W.D. Wash. Feb. 9, 2011) (citation omitted) (denying motion to compel Amazon to respond to subpoena seeking "sales information for 11,000 individual songs over a five year period" because "the hardship to Amazon in producing the requested documents outweighs their benefit to Defendants").  In striking this balance, the "concern for the unwanted burden thrust upon non-parties" is entitled to special consideration and weight.  *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998); *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) (affirming trial court's order quashing subpoena and favorably quoting commentary calling for "'an increased consciousness of the excesses [of non-party discovery] and an increased willingness either assumed voluntarily or imposed through wider use of the discretionary powers of the court to check them'" (citation omitted)).

Here, in addition to considering the burden and prejudice to Amazon as the non-party recipient of the subpoena, the Court must also consider the burden and prejudice to Amazon's customers whose private personal information will be disclosed, contrary to their reasonable expectations and without their consent.  As addressed below, those significant burdens and

---

[1] Defendants in this case previously issued a subpoena seeking similar information, to which Amazon objected.  Power Decl., Exs. D, E.  Defendants opted not to enforce their subpoena.  *Id.* ¶ 5.

AMAZON SERVICES, LLC'S MOTION FOR PROTECTIVE ORDER - 3

1  privacy concerns override Plaintiffs' desire for information that is not necessary for

2  administration of the settlement class.

3  **A.     Plaintiffs' Demands Create Significant Privacy And Security Concerns.**

4  Plaintiffs' demands are at odds with Amazon's promise to its customers to safeguard the

5  privacy of their personal information.  Amazon makes clear and express promises to its

6  customers regarding its treatment of their private data, and stands behind those promises:

> Amazon.com knows that you care how information about you is used and shared, and we appreciate your trust that we will do so carefully and sensibly. . . .  Information about our customers is an important part of our business, and we are not in the business of selling it to others. . . .
>
> We stand behind the promises we make . . . .  [We] will never materially change our policies and practices to make them less protective of customer information . . . without the consent of affected customers.

12  Power Decl., Ex. H.  Customers trust that when they provide their sensitive personal and

13  financial information to Amazon as part of a private retail transaction, that information will be

14  carefully guarded and not shared with third parties except under very limited circumstances.  *See*

15  *Amazon.com LLC v. Lay*, 758 F. Supp. 2d 1154, 1168 (W.D. Wash. 2010) (denying motion to

16  compel production of Amazon customers' information, recognizing that customers "will not

17  continue to make such purchases if Amazon reveals the contents of the purchases and their

18  identities").  To protect that relationship of trust, Amazon has consistently acted to prevent

19  disclosure of its customers' personal identifying information pursuant to subpoena.

20  Plaintiffs apparently assume that it is more important to Amazon customers to be made

21  aware of their potential right to participate in a class action settlement than it is to have Amazon

22  honor its privacy commitments and safeguard their personal information.  Not only is that

23  assumption dubious on its face (and undeniably wrong for at least some Amazon customers), it

24  has no basis in customers' *actual* expectations.  The only thing we know definitively about the

25  expectations of Amazon customers—who have no means to express themselves here—is that

26  they do business with Amazon trusting that Amazon will securely handle their private data.  It is

AMAZON SERVICES, LLC'S MOTION FOR PROTECTIVE ORDER - 4

simply not the role of Plaintiffs, Amazon, or the Court to decide for a particular customer whether a potential class settlement payment should be prioritized over that expected privacy and security.

Plaintiffs have also suggested that Amazon's customer information is necessary to prevent continued use of the allegedly harmful "WEN® Hair Care Product(s)" that are the subject of the underlying settlement. Power Decl., Ex. A. That argument is recklessly misguided. There has been no adjudication in this case that the products at issue are harmful, and to suggest otherwise to consumers is improper and misleading. The class settlement is the result of a compromise, and the purpose of the class notice is to allow class members to avail themselves of the settlement, not to issue a safety warning. In other words, this is not a de facto recall, and the Court should admonish Plaintiffs not to use the class notice in that way.[2]

But even if Plaintiffs could accurately or properly claim to be carrying out some public safety function, the existence of this class action and the resulting settlement is well-publicized. *Id.*, Ex. I (collecting online articles). The allegations of harm associated with "WEN® Hair Care Product(s)" are likewise widely known. *Id.* Indeed, near the top of the list of results returned on the first page of a simple Google search for "WEN® Hair Care Product(s)" is an article about the alleged injuries and this class action. *Id.*, Ex. J. Thus, whatever the rationale, such purported concerns do not justify Plaintiffs' demands that Amazon abrogate its customers' expectations of privacy.

---

[2] Amazon takes product safety seriously. *See* Power Decl., Ex. K. As set forth in its Product Safety Notice, Amazon "monitors the products sold on our website for product safety concerns. In concerning situations, we may remove the product from the website, reach out to sellers and manufacturers for additional information, place relevant warnings on the product detail page, or take other actions depending on the situation." *Id.* With respect to recalls, Amazon "monitors public recalls alert websites and also learns of recalls directly from manufacturers and vendors. When we learn of a recall, we suspend all impacted product offerings from our website and quarantine any related inventory in our fulfillment centers. We also reach out to any customers that previously purchased impacted products (and any sellers that may have offered such products) to inform them about the recall." *Id.*

AMAZON SERVICES, LLC'S MOTION FOR PROTECTIVE ORDER - 5

In addition to the direct burden on non-party consumers who have no ability to protect their own privacy interests here, the Court must also give special weight to the burdens on non-party Amazon. *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) (recognizing that "nonparties [are afforded] special protection against the time and expense of complying with subpoenas"). Amazon's business model depends on its customers' willingness to provide the sort of sensitive personal and financial information necessary to engage in private retail transactions. That willingness might evaporate should Amazon suddenly begin disclosing such information to parties with less capability (or incentive) to securely handle it. *See Lay*, 758 F. Supp. 2d at 1168. It is hardly a trivial burden to force a retailer to jeopardize its business by violating its customers' expectations and trust. To the contrary, Amazon's customers' privacy expectation is fundamental to their experience with and use of Amazon; the corresponding burden of violating that expectation here is plainly undue.

Amazon acknowledges that in *Ostrowski v. Amazon.com, Inc.*, No. C16-1378-JCC, 2016 WL 4992051 (W.D. Wash. Sept. 16, 2016), this Court granted the plaintiffs' motion to compel Amazon's production of its customers' identifying information. Amazon objected to the underlying subpoena on grounds similar to those raised here, arguing that the burden imposed on Amazon warranted denial of the motion to compel. *Id.* The *Ostrowski* court dismissed Amazon's arguments on the grounds that Amazon's privacy policy allows disclosure of customer information in response to a court order (of course), and there was in place a "protective order that prevent[ed] unnecessary disclosure" of the customer identifying information. *Id.* at *2. Respectfully, the *Ostrowski* court's reasoning missed the mark.

First, the technicalities of Amazon's privacy policy are not the critical point. Amazon does not claim that its privacy policies override this Court's authority to compel Amazon to disclose customer data. But to demonstrate that they are entitled to customer information, *Plaintiffs must first satisfy Rule 45*. As part of that inquiry, the law requires the Court to afford special weight to the burdens imposed by the subpoena. *Exxon Shipping Co.*, 34 F.3d at 779.

AMAZON SERVICES, LLC'S MOTION FOR PROTECTIVE ORDER - 6

Those burdens—to both Amazon and its customers—hinge on Amazon's commitments to protect its customers, its customers' reliance upon Amazon's protection, and the cumulative burden on Amazon. The issue is not whether Amazon is technically in breach of its policies; the issue is whether the basic relationship of trust between Amazon and its customers is more important than sheer speculation that a consumer would rather know he or she is entitled to a nominal settlement recovery. The invasion of customer privacy is the key burden, and that burden should trump Plaintiffs' unnecessary demands.

Second, the effectiveness of a protective order also misses the point. Amazon is experienced and adept at protecting its customers' information, offering responsible and sophisticated technical and physical controls designed to prevent unauthorized access to or disclosure of customer content. *See* Power Decl., Ex. G ("How Secure Is Information About Me"). No third-party administrator could conceivably be as technologically savvy or protective as Amazon. And if Amazon is forced to disclose customer data to a third-party administrator that is unprepared to guard such data, and there is a subsequent breach or leak of customer identifying information, there is no mechanism whatsoever to protect Amazon.

More to the point, the *Ostrowski* court's reliance on a protective order ignores the fact that the damage caused by release of Amazon's customer information *inherently results from the release itself*. *See Lay*, 758 F. Supp. 2d at 1168. Put differently, even assuming that the protective order were honored, that there were no security breach, and that Amazon's customers' information were only used to identify and contact potential class members, Amazon still would have revealed its customers' information and put that information at risk, entirely contrary to its customers' expectations. As such, this case is plainly distinguishable from *Ford Global*, where Judge Robart found that the party opposing discovery "fail[ed] to demonstrate how or why the protective order . . . [did] not adequately address [its] privacy interests." *Ford Global Techs., LLC v. New World Int'l, Inc.*, No. C15-1329 JLR, 2015 WL 6507151, at *3 (W.D. Wash. Oct.

AMAZON SERVICES, LLC'S MOTION FOR PROTECTIVE ORDER - 7

27, 2015).  By contrast, Plaintiffs' protective order does nothing to alleviate or address the privacy concerns of Amazon and its customers.

In sum, production in accordance with this subpoena would violate Amazon's customers' privacy expectations, undermining Amazon's entire business model and posing an undue burden.  In deciding to the contrary, the *Ostrowski* court's reasoning was misplaced, as it did not appropriately apply the standard under Rule 45.  The proper focus is the burden imposed on Amazon by compelling its violation of its customers' trust.

**B.     Plaintiffs' Demands Create A Cumulative Burden For Amazon.**

The burdens identified above provide ample grounds to grant this motion, but the subpoena has broader implications for Amazon.  The *Ostrowski* court stated that the burden of production was not undue because Amazon "clearly possesse[d] the requested data and has already compiled it." *Ostrowski*, 2016 WL 4992051, at *2.  But the issue is not the time and expense involved in gathering responsive data (though Amazon reserves the right to seek reimbursement for such costs).[3]  The issue is Amazon's "legitimate concern with the potential *cumulative effect* of granting such requests." *See Davis Enters. v. U.S. EPA*, 877 F.2d 1181, 1187 (3d Cir. 1989) (emphasis added) (approving EPA's rejection of deposition subpoena based on anticipated cumulative impact of demands for testimony of EPA employees in subsequent private lawsuits); *see also Solomon v. Nassau County*, 274 F.R.D. 455, 459 (E.D.N.Y. 2011) ("By focusing only on the direct burden the subpoena places on [the subpoenaed third parties], and the direct benefit potentially conferred on himself, the Plaintiff fails to take into account the [subpoenaed third party's 'legitimate concern with the potential cumulative effect of granting such requests.'" (quoting *Davis Enters.*, 877 F.2d at 1187)).  That is to say, even if a single production of customer information did not result in a substantial administrative burden to Amazon, the reviewing court must consider the breadth of Amazon's business and the flood of

---

[3] The internal expense and burden on Amazon to comply with these subpoenas is not trivial.  It requires a significant commitment of time and resources that would otherwise be devoted to Amazon's business.

AMAZON SERVICES, LLC'S MOTION FOR PROTECTIVE ORDER - 8

future similar requests that will inevitably follow. *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1198 (11th Cir. 1991) (expected "onslaught of subpoenas" in similar litigation raised substantial concern about "cumulative impact" of individual subpoena).

Retailers like Amazon should not be forced to become third-party clearinghouses of consumer information for class action plaintiffs and their agents, thereby watching their "employee resources . . . be commandeered into service by private litigants to the detriment of [their] smooth functioning." *Exxon Shipping Co.*, 34 F.3d at 779 (noting that federal courts should consider such a burden in quashing a subpoena served upon a government agency). Again, Amazon is not a party to these cases, is not culpable or liable in any way, did not agree to the settlement at issue, and has no interest in the outcome. It is simply unfair to impose material burdens on Amazon under those circumstances,  Respectfully, the *Ostrowski* decision created a troubling and potentially far-reaching precedent by forcing Amazon to become part of the claims administration process in every class action involving retail products sold online. Amazon urges the Court not to perpetuate that unfair precedent.

**C.    The Information Plaintiffs Seek Is Not Necessary.**

Against the significant privacy concerns and cumulative burdens on Amazon and its customers, the Court must weigh Plaintiffs' purported need for Amazon customers' information to comply with the direct notice requirements of Rule 23(c)(2)(B). But Plaintiffs can notify those interested in the class settlement via means other than personal information obtained from Amazon. Indeed, Plaintiffs have already conceded this point. In their motion for preliminary class approval, Plaintiffs explained that "[d]ue process requires only a procedure reasonably calculated to reach class members." *See* Memorandum of Law in Support of Motion for Preliminary Approval of Class Action Settlement at 19, *Friedman,* Case No. 14-cv-06009-ODW-AGR, Doc. No. 153-1 (filed June 28, 2016). Plaintiffs described their four-part notice plan, involving "direct notice, by email and US Mail, to approximately 6 million Settlement Class members for whom Defendants possess contact information." *Id.* In addition, Plaintiffs

AMAZON SERVICES, LLC'S MOTION FOR PROTECTIVE ORDER - 9

1  explained that notice will be published, a settlement website will be created, and notice will be
2  provided to governmental agencies. *Id.* at 19-20. Plaintiffs represented that email notice alone
3  will be issued to approximately five million class members, and notice by U.S. Mail to another
4  one million class members. *Id.* at 20.

5  In addition to direct notice, Plaintiffs have identified several other alternative means of
6  notice. As noted above, allegations of harm associated with WEN® Hair Care Products are
7  widely known and easily accessible via internet searches. As such, the robust website proposed
8  by Plaintiffs (*see id.* at 21 and Ex. D to Joint Declaration (Doc. No. 153-6)) will undoubtedly be
9  returned in response to any consumer search for information on WEN® Hair Care Products.
10 Finally, publication is a long-accepted form of reasonable notice of class settlements. *See* 5 Fed.
11 Proc. Forms § 11:122, Westlaw (database updated June 2016) (noting that provision of published
12 notice to potential class members "is a long-accepted norm in large class actions"). Indeed, class
13 action plaintiffs and administrators have been notifying and compensating consumer classes for
14 decades without resort to third-party subpoenas to retailers.[4]

15 The *Ostrowski* court rejected, as a basis for quashing a subpoena, that alternative methods
16 of notice were available to the putative class action plaintiffs, noting that "the Supreme Court has
17 said that direct notice is mandated where contact information can be obtained through reasonable
18 effort." 2016 WL 4992051, at *2 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177
19 (1974)). But that is precisely Amazon's point—a determination of what effort is reasonable is
20 made case by case, *West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1090 (2d Cir. 1971), and
21 the effort required by non-party Amazon to provide the information sought here is simply not

---

[4] Respectfully, this Court should be mindful of the recognized Congressional concern that "developments in technology could erode the privacy interest that Americans traditionally enjoyed." *See In re Warrant to Search a Certain E-Mail Account Controlled & Maintained by Microsoft Corp.*, 829 F.3d 197, 219 (2d Cir. 2016) (recognizing this concern in holding that Microsoft could not be compelled to disclose customer communications in compliance with a warrant). Put differently, that online retailers now have the technology to collect and store a swath of customer information should not change decades of class action practice, to the detriment of those customers' privacy.

AMAZON SERVICES, LLC'S MOTION FOR PROTECTIVE ORDER - 10

reasonable. It is more than performing search queries and securing data. In order to provide Plaintiffs the confidential customer information sought, Amazon would also have to (1) violate its customers' trust, (2) potentially place its customers' identifying information at risk, and (3) position itself as a clearinghouse of information for class action plaintiffs at the expense of its operation and central mission. Given this particular set of circumstances, it well within this Court's discretion to require "cooperative ingenuity" by Plaintiffs' counsel to "determin[e] the most suitable [alternative] notice" available. *Berland v. Mack*, 48 F.R.D. 121, 129 (S.D.N.Y. 1969).

In sum, alternative methods of notice are in fact available and have been detailed by Plaintiffs. Where, as here, discovery is sought from a non-party, and "'the party seeking the information can easily obtain the same information without burdening the nonparty, the court will quash the subpoena.'" *Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement & Power Dist.*, No. 2:10-CV-00290-DAE-BGM, 2016 WL 159842, at *3 (D. Ariz. Jan. 14, 2016) (quoting *Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 467 (D.S.D. 2011)); *accord Peoples Nat'l Bank, N.A. v. Mehlman*, No. 4:15-CV-00996 AGF, 2016 WL 3268761, at *2 (E.D. Mo. June 7, 2016); *see also Town of Wolfeboro v. Wright-Pierce*, No. 12-CV-130-JD, 2014 WL 1713508, at *1 (D.N.H. Apr. 30, 2014) ("[I]f a party seeking information from a nonparty can easily obtain the same information elsewhere, that factor weighs in favor of granting a motion [to] quash the subpoena."). Thus, that the information in question is not necessary for Plaintiffs' administration of the settlement further compels that Plaintiffs' burdensome discovery demands be checked, according to this Court's discretion. *See Dart Indus. Co.*, 649 F.2d at 649.

### III.  CONCLUSION

In light of the circumstances, a protective order preventing disclosure of the confidential identities and contact information of Amazon's customers should be granted.

AMAZON SERVICES, LLC'S MOTION FOR PROTECTIVE ORDER - 11

88640544.5 0053837-00633

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

DATED:  October 19, 2016.

STOEL RIVES LLP

_____
Vanessa Soriano Power, WSBA No. 030777
vanessa.power@stoel.com

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101
Telephone:  (206) 624-0900
Facsimile:  (206) 386-7500

Attorneys for Amazon Services, LLC

AMAZON SERVICES, LLC'S MOTION FOR PROTECTIVE ORDER - 12